BIANCO, J.T.C.
This matter is before the Tax Court on appeal from the Judgment of the Essex County Board of Taxation denying the application of Plaintiffs Louis Paul Hennefeld and Blair William O’Dell (collectively the “Plaintiffs”), for a 100% disabled veteran’s property tax exemption (“disabled veteran’s exemption”) pursuant to N.J.S.A. 54:4-3.30, for tax year 2004.[2] Plaintiffs are the owners of real property located at 512 Park Street, in the Township of Montclair, County of Essex, and further designated by the taxing district as Block 2705, Lot 8 (the “subject property”). The Plaintiffs have filed a Motion for Summary Judgment seeking an Order directing Defendant Township of Montclair (the “Township”) to grant the 100% disabled veteran’s exemption. For the reasons set forth in this opinion, the court will issue a judgment granting a 100% disabled veteran’s exemption from July 12, 2004.
*172 The facts are not in dispute. Plaintiff Louis Paul Hennefeld (individually “Mr. Hennefeld”) served in the United States Air Force from February 19, 1952 to January 14, 1956 and from August 15, 1957 to May 7, 1968., After approximately 15 years of service in the military, Mr. Hennefeld received an honorable discharge. Thereafter, on June 1, 1968 the Veterans Administration determined that Mr. Hennefeld’s “wartime sendee-connected disability was totally disabling.”
The Plaintiffs are a same-sex couple who have lived together since September 1975. They purchased the subject property as their home on September 9,1985, taking title as joint tenants with right of survivorship. Since 1985, the Plaintiffs have received a 50% disabled veteran’s exemption on the subject property.[3] Resolutions recognizing Mr. Hennefeld’s qualification for a 50% disabled veteran’s exemption and authorizing the cancellation of 50% of his property taxes were unanimously adopted by the Montclair Township Council on October 29, 1985. The Plaintiffs never appealed the 50% disabled veteran’s exemption they received in 1985, and do not challenge the validity of the prior years’ partial exemption in the present matter.[4] The Plaintiffs continue to receive the 50% disabled veteran’s exemption.
On July 6, 2000, the State of Vermont issued a License and Certificate of Civil Union duly establishing a civil union between the Plaintiffs. On October 22, 2003, the Plaintiffs were legally *173 married under Canadian law in the city of Niagara Falls, Ontario Canada.
The Plaintiffs filed an application with Montclair Tax Assessor Joan Kozeniesky (the “Tax Assessor”) on January 17, 2004, claiming that they qualified for a 100% disabled veteran’s exemption pursuant to N.J.S.A. 54:4-3.30. On March 1, 2004, the Tax Assessor issued the Plaintiffs a Notice of Disallowance of Claim for Veteran’s Exemption/Deduction (the “Notice”). The Notice indicated that the Plaintiffs’ “application for a veteran’s deduction/disabled veteran’s exemption has been disallowed for failing to satisfy the requirements ... [of] Full or partial ownership of real or personal property/Full ownership of principal residence [and] Other: Legislature (sic) Pending-Disabled Vet must be sole owner.” On March 29, 2004 the Plaintiffs re-conveyed the subject property to themselves as tenants by the entirety. That same day, the Plaintiffs filed a Petition of Appeal with the Essex County Board of Taxation (the “County Board”) challenging the Tax Assessor’s decision.
At oral argument, the Township’s counsel indicated that it was unlikely the Tax Assessor considered the fine distinctions between varying types of title ownership (such as joint tenancy as opposed to tenancy by the entirety) when approving or disapproving an application for a 100% disabled veteran’s exemption. Rather, pursuant to the Township’s long-standing interpretation of N.J.SA. 54:4-3.30, the full disabled veteran’s exemption is customarily approved when the qualified disabled veteran is married under a traditional marriage (i.e. male and female). The Tax Assessor’s reference to “Legislature (sic) Pending” contained in the Notice was apparently to New Jersey’s recent legislation generally known as the Domestic Partnership Act (the “DPA”), L. 2003, c. 246 (N.J.S.A. 26:8A-1 to — 12). The DPA was approved on January 12, 2004, but was not effective until July 10, 2004 (i.e. 180 days following enactment. L. 2003, c. 246, § 60). On July 12, 2004, the Plaintiffs registered as domestic partners in New Jersey under the provisions of the DPA.
*174 After a hearing was held before the County Board, a Memorandum of Judgment was issued on June 30, 2004 denying the Plaintiffs’ appeal on the basis that Mr. Hennefeld did not qualify as a 100% totally disabled veteran. The Plaintiffs immediately brought to the attention of the County Board that Mr. Hennefeld’s status as a 100% totally disabled veteran was never challenged. In response, the County Board issued an Amended Memorandum of Judgment dated August 13, 2004 simply denying the Plaintiffs’ appeal for the 100% disabled veteran’s exemption. The denial of the 100% disabled veteran’s exemption application, however, did not effect the Plaintiffs’ 50% exemption which they continue to receive. It is from the Amended Memorandum of Judgment that the Plaintiffs filed the present complaint on September 23, 2004, seeking the full 100% disabled veteran’s exemption pursuant to N.J.SA 54:4-3.30.
The Plaintiffs’ supporting papers offered four arguments in favor of their claim for a 100% disabled veteran’s exemption. First, the Plaintiffs contend that N.J.SA 54:4-3.30 mandates that they receive a 100% disabled veteran’s exemption since they have always owned 100% of the subject property, first as joint tenants with right of survivorship and more recently as tenants by the entirety. Second, the Plaintiffs claim that since New Jersey’s DPA authorizes the recognition of their Civil Union in Vermont, they are entitled to all the benefits to which a traditional married couple would be entitled, including the right to hold property by the entirety, and the right of a surviving spouse to continue the disabled veteran’s exemption under N.J.S.A. 54:4-3.30(b). Third, Plaintiffs argue that other New Jersey statutes including N.J.S.A 54:4-8.11 and N.J.S.A. 54:4-8.18 support their 100% ownership interest in the subject property as tenants by the entirety. Fourth, the Plaintiffs argue that under the doctrine of comity, their legal marriage in Canada, and all the rights pursuant thereto, should be recognized in New Jersey, as no New Jersey statute declares same-sex marriages to be against New Jersey’s public policy. At oral argument the Plaintiffs’ counsel clarified that his clients’ claim to the 100% disabled veteran’s exemption *175 was based primarily upon their union in Vermont and marriage in Canada, and not on the DPA.
The Township’s responding papers, while admitting to the Plaintiffs’ statement of material facts, set forth the Township’s opposition to any retroactive applicability of the DPA. The Township takes the position that the Legislature never intended for the Plaintiffs to be treated as domestic partners prior to their registration under the DPA on July 12, 2004. The Township did not specifically oppose giving the 100% veteran’s exemption to the Plaintiffs, but rather merely questioned the authority to do so, based upon its long-standing interpretation of N.J.S.A. 54:4-3.30, dating back to at least 1985.
I. Summary Judgment Standard.
The New Jersey Supreme Court makes clear that when deciding a motion for summary judgment,
the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).]
The intent of the court in Brill was to encourage the granting of a summary judgment motion when the non-moving party relies on implausible fact inferences and unsupported assertions. Id. at 541-42, 666 A.2d 146. The court in Brill further explained that “[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a ‘genuine’ issue of material fact for purposes of Rule 4:46-2.” Id. at 540, 666 A.2d 146. With no material facts in dispute, the Court finds that the immediate matter is ripe for summary judgment.
II. The Disabled Veteran’s Exemption.
At the center of the controversy in this matter is the interpretation of N.J.S.A. 54:4-3.30 to — 3.33 (the “Exemption Statute”). The Exemption Statute provides in pertinent part that:
*176 The dwelling house and the lot or curtilage whereon the same is erected, of any citizen and resident of this State, now or hereafter honorably discharged or released under honorable circumstances, from active service, in time of war, in any branch of the Armed Forces of the United States, who has been or shall be declared by the United States Veterans Administration or its successor to have a service-connected disability ... or 100% permanent disability ..., or resulting from disease contracted while in such active service shall be exempt from taxation, on proper claim made therefor, and such exemption shall be in addition to any other exemption of such person’s real and personal property which now is or hereafter shall be prescribed or allowed by the Constitution or by law but no taxpayer shall be allowed more than one exemption under this act.
[N.J.S.A 54:4-3.30(a) (emphasis added.) ]
“Dwelling house,” as used in this act, shall mean any one-family building or structure ... oumed and occupied by a claimant as his legal residence in this State ... and includes any outhouses or appurtenances belonging thereto or usually enjoyed therewith.
[N.J.S.A. 54:4-3.33 (emphasis added.) ]
The Exemption Statute was adopted in 1948 (L. 1948, c. 259, § 1.) in the wake of World War II, at a time in our history when there was no public debate about same-sex marriages, civil unions, or domestic partnerships, and when the Legislature never contemplated such relationships. In 1953, New Jersey’s Constitution was amended with a new provision specifically authorizing the adoption of legislation that provides tax “exemptions” for disabled veterans. The Constitution provides in pertinent part that:
3. Taxation; exemptions; veterans and surviving spouses of veterans
Any person ... who has been or shall be declared by the United States Veterans Administration, or its successor, to have a service-connected disability, shall be entitled to such further deduction from taxation as from time to time may be provided by law.
[N.J. Const. art. VIII, § 1, ¶ 3 (emphasis added.) ]
Before this veteran-specific constitutional amendment, it appears that the Exemption Statute was authorized generally under Article VIII, § 1, ¶ 2 of the Constitution of 1947, providing in part that “[e]xemption from taxation may be granted only by general laws.”
Since 1985, the Township has recognized Mr. Hennefeld’s entitlement to the disabled veteran’s exemption under the Exemption Statute. That entitlement has never been in question, and until recently neither has the partial exemption, (i.e. 50% as opposed to 100%) which has been authorized by the Township for the past twenty years. The Township’s long-standing practice with regard *177 to applications for the disabled veteran’s exemption filed by qualified veterans who are co-owners of their “dwelling house” as defined by N.J.S.A. 54:4-3.33, has been to recognize the full exemption when the co-owners are married, but only recognize a proportional exemption when the co-owners are not married. It is evident that evolving law with regard to same-sex unions and marriage over the past several years has given cause for the Plaintiffs to reconsider their apparent prior assent to the Township’s approval of only a 50% disabled veteran’s exemption. It appears that the Plaintiffs’ Civil Union in Vermont in 2000 and marriage in Canada in 2003 were the impetus for their renewed application for a 100% disabled veteran’s exemption on January 17, 2004.
Our courts have long held that:
It is generally accepted that exemptions from local property taxation must be strictly construed because an exemption from taxation is a departure from the equitable principle that all taxpayers should bear their just and equal share of the public burden of taxation.
[St. Luke’s Village Inc. v. Peapack & Gladstone Bor., 11 N.J.Tax 76, 80 (Tax 1990) (citing Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961)).]
Guided by this precedent in reconciling the parties’ varying interpretations of the Exemption Statute, this court must ascertain the Legislative meaning of the term “owned” as embodied in the definition of “dwelling house,” and whether the Legislature intended for the marital status of a qualified disabled veteran to be a consideration in approval or disapproval of a full or partial disabled veteran’s exemption.
What this court will not consider, although raised by the Plaintiffs, is whether Plaintiff Blair William O’Dell (individually “Mr. O’Dell”) has any rights of a surviving partner or spouse to continue the disabled veteran’s exemption under N.J.S.A. 54:4-3.30(b). That statute provides:
The surviving spouse of any such citizen and resident of this State who at the time of death was entitled to the exemption provided under this act, shall be entitled, on proper claim made therefor, to the same exemption as the deceased had, during the surviving spouse’s widowhood or widowerhood, as the case may be, and while a resident of this State, for the time that the surviving spouse is the legal owner thereof and actually occupies the said dwelling house or any other dwelling house thereafter acquired.
*178 [N.J.S.A 54:4 — 3.30(b).]
This issue is clearly premature as no rights accrue under N.J.S.A 54:4-3.30(b) until the death of the qualified disabled veteran. Since Mr. Hennefeld is still alive, and Mr. O’Dell may not survive him, a determination as to the rights of the non-veteran surviving partner is not ripe for adjudication at this time. The court further observes that legislation addressing this very issue has recently been introduced in the State Assembly which may resolve the Plaintiffs’ concerns in this regard.[5]
III. The Plaintiffs’ Marriage in Canada.
While it is undisputed that Plaintiffs were legally married under Canadian law, the court finds no basis under New Jersey law that would allow recognition of that marriage.
In urging this court to recognize their same-sex marriage in Canada, the Plaintiffs cite Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895) arguing that “comity of nations” is an obligation that depends on considerations of international duty and convenience, and a preference for comity exists when the laws of the foreign nation are consistent with those of the sovereign. Id. at 163, 16 S.Ct. 139. However, “[a]s a general matter, the laws of one nation do not have force or effect beyond its borders.” In re Kdndu, 315 B.R. 123, 133 (Bankr.W.D.Wash.2004), citing Hilton v. Guyot, supra, 159 U.S. at 163, 16 S.Ct. 139. Furthermore,
‘Comity,’ in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience ____Comity is voluntary.
[Id., citing Hilton v. Guyot, supra, 159 U.S. at 163-65, 16 S.Ct. 139.]
The Plaintiffs also rely on Bucca v. State, 43 N.J.Super. 315, 128 A.2d 506 (Ch.Div.1957) where the court noted that the validity of marriage is determined by the law of the place where it was contracted unless it violates the state’s public policy. Ibid. Rely *179 ing on New Jersey’s incest laws, the court in Bucca v. State denied recognition of an Italian marriage between an uncle and niece finding that “the public policy of New Jersey is opposed to such incestuous marriages.” Id. at p. 321, 128 A.2d 506. The Plaintiffs contend that since New Jersey has no law specifically declaring that same-sex marriage is against the State’s public policy, their Canadian marriage should therefore be recognized in New Jersey. The court rejects this argument.
Same-sex marriage has been a widely debated national issue over the past several years.[6] Massachusetts is currently the only state that permits same-sex marriage.[7] In 1998, Hawaii amended its constitution giving the legislature “the power to reserve marriage to opposite-sex couples,”[8] Haw. Const. art. 1 § 23, and Alaska adopted a constitutional amendment barring same-sex marriage. Alaska Const, art. I § 25. In 2004, eleven other states approved ballot measures banning same-sex marriage.[9] Even the gay and lesbian community is divided on the issue of same-sex *180 marriage.[10]
The Federal Government weighed in on the debate in 1996, when Congress enacted the Defense of Marriage Act (“DOMA”) Pub.L. 104-199, § 2(a), 110 Stat. 2419 (1996). DOMA provides that:
No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.
[ 28 U.S.C.A. § 1738C. ]
In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word “marriage” means only a legal union between one man and one woman as husband and wife, and the word “spouse” refers only to a person of the opposite sex who is a husband or a wife.
*181 [ 1 U.S.C.A. § 7. ]
DOMA has survived early constitutional challenges in the Federal Courts. See In re Kandu, supra, 315 B.R. at 148, (concluding that “DOMA does not violate the principles of comity, or the Fourth, Fifth, or Tenth Amendments to the U.S. Constitution.”); see Wilson v. Ake, 354 F.Supp.2d 1298 (M.D.Fla.2005) (finding DOMA “constitutionally valid.”)[11]; but see Lawrence v. Texas, 539 U.S. 558, 578-79, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (holding that while the Due Process Clause of the Constitution protects the right of two individuals of the same sex to engage in mutually consensual private sexual conduct, the case did “not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.”)
Of these constitutional challenges to DOMA, In re Kandu is particularly relevant and instructive. In that ease, plaintiffs sought recognition of their same-sex marriage in British Columbia, Canada to allow them to file a joint petition for bankruptcy under 11 U.S.C. § 302. The United States Bankruptcy Court for the Western District of Washington found that although the plaintiffs were married according to the laws of British Columbia, Canada, the United States does not recognize same-sex marriages. The Bankruptcy Court explained that:
DOMA states that, for federal purposes, marriage is solely the union between one man and one woman. Particularly relevant, the Supreme Court has stated that, ‘Tal judgment affecting the status of persons, such as a decree confirming or dissolving a marriage, is recognized as valid in every country, unless contrary to the policy of its own law.”
[In re Kandu, supra, 315 B.R. at 133, citing Hilton v. Guyot, supra, 159 U.S. at 167, 16 S.Ct. 139.]
The court in In re Kandtt concluded that “[bjecause the British Columbia policy and the United States policy concerning marriage directly conflict, this Court must prefer its own laws finding *182 DOMA controlling in this case.”[12] Id. at 133-34. The court noted that “[according to the House Report [H.R.Rep. No. 104-664, at 12, reprinted in 1996 U.S.C.C.A.N. at 2916], the purpose of DOMA was to defend the institution of traditional, heterosexual marriage ...” and concluded that “in reviewing the legislative history, ... the federal government has announced a strong and clear countervailing policy concerning marriage that justifies disregarding comity.” Id. at 133, n. 3.
The debate over same-sex marriage has not eluded New Jersey.[13] In the recent decision of Lewis v. Harris, 2003 WL 23191114 (Law Div.2003), the court concluded that marriage statutes in New Jersey do not permit same-sex marriages, and the right to marry does not include a fundamental right to same-sex marriage. That decision is now on appeal to the Appellate Division.[14] It is noted, however, that recognition of same-sex marriages entered into under the laws of a foreign country was not before the court in Lewis v. Harris.
After the decision in Lewis v. Harris, the New Jersey Legislature adopted the DPA recognizing domestic partnerships and providing domestic partners with certain “rights and benefits that are accorded to married couples.” N.J.S.A 26:8A-2(d). While the DPA had been adopted but was not yet effective when the Plaintiffs filed their application for a 100% disabled veteran’s exemption,[15] the legislative findings and declarations set forth in the DPA, as well as the Assembly Appropriations Committee Statement (the “Committee Statement”) attached to that legislation, are nevertheless pertinent and instructive to ascertain legis *183 lative intent and public policy at the time of the DPA’s adoption, concerning same-sex marriage. A comprehensive analysis of the Plaintiffs rights under the DPA is found in Section VII of this opinion.
In setting forth “a clear and rational basis” for making available certain health and pension benefits to same-sex domestic partners and not to opposite sex domestic partners, the Legislature found and declared with regard to same-sex marriage that:
... domestic partnerships in which both persons are of the same sex ... are ... unable to enter into a marriage with each other that is recognized by New Jersey law, unlike persons of the opposite sex who are in a domestic partnership but have the right to enter into a marriage that is recognized by State law ...
[N.J.S.A. 26:8A-2(e).]
The Committee Statement provides similar language:
The bill would also make certain health and pension benefits available to dependent domestic partners in the case of domestic partnerships in which both persons are of the same sex and therefore unable to enter into a marriage with each other that is recognized by New Jersey law ...
[Assemb. Appropriations Comm., Assemb. No. 3743 — L. 2003, c. 246, following N.J.S.A 26:8A-1.]
In the aftermath of the court’s ruling in Lewis v. Harris, the Legislature had the opportunity to enact law permitting same-sex marriage in New Jersey. Instead, the Legislature provided certain rights and recognition to domestic partners through the enactment of the DPA, while also making it clear in that same legislation, that same-sex marriage is not recognized by New Jersey law.
Furthermore, the DPA, in recognizing certain out-of-state same-sex relationships, did not extend that recognition to out-of-state same-sex marriages. The Committee Statement is clear in providing that:
while individuals in domestic partnerships share some of the same emotional and financial bonds and other indicia of interdependence as married couples, domestic partnership is a status distinct from marriage.
[Assemb. Appropriations Comm., Assemb. No. 3743 — L. 2003, c. 246, following N.J.S.A. 26:8A-1 (emphasis added.) ]
In view of this distinction, the Legislature, in providing that “[a] domestic partnership, civil union or reciprocal beneficiary relationship entered into outside of this State, which is valid under the *184 laws of the jurisdiction under which the partnership was created, shall be valid in this State,” N.J.S.A. 26:8A-6 (c), could not have intended to include marriage within the terms domestic partnership, civil union, or reciprocal beneficiary relationship, and therefore could not have intended to recognize same-sex marriages entered into outside of New Jersey.[16]
Based on the foregoing analysis, this court finds that the marriage laws of Canada which recognize same-sex marriage are not consistent with those of New Jersey which do not recognize same-sex marriage. Moreover, the explicit legislative findings and declarations of the DPA, along with the Committee Statement, set forth the public policy of this state against same-sex marriage. Accordingly, the Plaintiffs’ Canadian marriage cannot be afforded comity in New Jersey.
IV. The Plaintiffs’ Civil Union in Vermont.
As with their Canadian marriage, it is undisputed that Plaintiffs legally entered into a civil union in Vermont on July 6, 2000.
Vermont’s Civil Union Statute provides that:
[a] • party to a civil union shall be included in any definition or use of the terms “spouse”, “family,” “immediate family,” “dependent,” “next of kin,” and other terms that denote the spousal relationship, as those terms are used throughout the law. [15 Vt. Stat. Ann. § 1204(b).]
In Vermont, same-sex partners in “a civil union have all the same benefits, protections, and responsibilities under law ... as are granted to spouses in a marriage” [15 Vt. Stat. Ann. § 1204(a) ], including the “eligibility to hold real and personal property as tenants by the entirety ...,’’ [15 Vt. Stat. Ann. § 1204(e)(1) (emphasis added) ], a form of property ownership that has traditionally been reserved for married persons. See Wyckoff v. Young Women’s Christian Ass’n, 37 N.J.Super. 274, 281, 117 A.2d 162 (Ch.Div.1955). It is on the basis of Vermont law and their marriage in Canada that Plaintiffs have re-conveyed to themselves *185 title to the subject property in New Jersey as tenants by the entirety. This is discussed more fully in Section V of this opinion.
It has been observed that:
Vermont [same-sex] couples who [enter into civil unions and] remain in Vermont immediately obtain numerous benefits, protections, and responsibilities that same-sex couples have never before received from state government....
But should they .. leave Vermont, ... their status as a couple protected by the government will immediately become uncertain.
This uncertainty is even greater for non-Vermont couples [like the Plaintiffs] who travel to Vermont, enter into civil unions, and then return to their domiciles.
[Cox, Barbara J., But Why Not Maniage: An Essay on Vermont’s Civil Unions Law, Same-Sex Marriage, and Separate But (Un)Equal, 25 Vt L.Rev 113, 137 (2000).]
The Plaintiffs contend that since they were joined in a lawful civil union and are considered “spouses” under Vermont law, and since that civil union is valid in New Jersey pursuant to the DPA (N.J.S.A. 26:8A-6(c)), then they must be included in any definition or use of the term “spouse”, under New Jersey Law. The Plaintiffs’ argument, however, ignores the fact that the DPA was not effective until July 10, 2004 (as discussed in Section VIII of this opinion), and would therefore not mandate recognition of out-of-state same-sex unions before that date.
Alternatively, even assuming the DPA is applicable, the court finds that the Plaintiffs’ argument is no more persuasive. It is clear that under the DPA the Plaintiffs’ civil union in Vermont would be valid in New Jersey. N.J.S.A. 26:8A-6(c). Under the doctrine of state comity, “[tjhere is no question ... that where the laws of a foreign state do not conflict with the laws of our state or the public policy of this state, it is the duty of our Courts to recognize and enforce the laws of said sister state.” Liberty Mut. Ins. Co. v. Mahieu Const. Co., 26 N.J. Misc. 12, 13, 55 A.2d 907 (Dist.Ct.1947); see also Zurich General Accident & Liability Ins. Co. v. Ackerman Bros., 124 N.J.L. 187, 11 A.2d 52 (E. & A.1940); Giardini v. McAdoo, 93 N.J.L. 138, 107 A. 437 (E. & A.1919); but see In re Winter’s Estate, 24 N.J. Misc. 167, 169, 47 A.2d 545 (Orph.1946) (finding that “[tjhere is no principle of interstate comity which can effect the disposition of New Jersey real estate, either by wills not according to our laws ..., or by foreign *186 statutes.) (Citations omitted). However, the DPA clearly does not provide that Vermont law must, in all respects concerning same-sex unions, usurp conflicting or contrary New Jersey law or public policy. The Plaintiffs cite no provision of the DPA, other New Jersey statute, or case law that supports their contention.
As discussed in Section III above, DOMA protects any “State ... [from being] required to give effect to any public act, record, or judicial proceeding of any other State ... respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State.” 28 U.S.C.A. § 1738C. In Wilson v. Ake, supra, the plaintiffs asserted that DOMA conflicts with the Federal Constitution’s Full Faith and Credit Clause. Article IV, Section I of the Federal Constitution provides:
Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.
[U.S. Const. art. IV, § I]
The United States District Court for the Middle District of Florida found that:
Congress’ actions in adopting DOMA are exactly what the Framers envisioned when they created the Full Faith and Credit Clause. DOMA is an example of Congress exercising its powers under the Full Faith and Credit Clause to determine the effect that “any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage” has on other States.
[Wilson v. Ake, supra, 354 F.Supp.2d 1298 (M.D.Fla.2005), citing 28 U.S.C. § 1738C.]
The Federal District Court further found that “Congress’ actions [in adopting DOMA] are an appropriate exercise of its power to regulate conflicts between the laws of two different States ...”, id., and that “[a]dopting Plaintiffs’ rigid and literal interpretation of the Full Faith and Credit [Clause] would create a license for a single State to create national policy.” Id., citing Nevada v. Hall, 440 U.S. 410, 423-24, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) (finding that “Full Faith and Credit does not ... enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it.”) (quoting Pacific Employers Ins. Co. v. *187 Industrial Accident Comm’n, 306 U.S. 493, 504-505, 59 S.Ct. 629, 83 L.Ed. 940 (1939); and Williams v. North Carolina, 317 U.S. 287, 296, 63 S.Ct. 207, 87 L.Ed. 279 (1942) (finding that “[n]or is there any authority which lends support to the view that the full faith and credit clause compels the courts of one state to subordinate the local policy of that state, as respects its domiciliaries, to the statutes of any other state.”)).
Vermont’s Civil Union Statute is clearly more expansive than New Jersey’s DPA. New Jersey does not extend the rights of married persons to same-sex couples to the same degree that Vermont does. The Full Faith and Credit Clause does not require a State to apply another State’s law where it violates its own legitimate public policy. Wilson v. Ake, supra, citing Nevada v. Hall, supra, 440 U.S. at 422, 99 S.Ct. 1182 (citing Pacific Ins. Co. v. Industrial Accident Comm’n, supra, 306 U.S. at 493, 59 S.Ct. 629). Accordingly, New Jersey cannot be mandated to accept more of another state’s law, with regard to same-sex relationships, than New Jersey’s Legislature intended. To hold otherwise would offend the spirit, intent, and substance of DOMA. 28 U.S.C.A. § 1738C.
V. The Plaintiffs’ Ownership Interest in the Subject Property.
It is undisputed that the Plaintiffs own and occupy the subject property, a one-family residence as defined by the Exemption Statute, and otherwise qualify in all respects to receive the disabled veteran’s exemption. The Plaintiffs contend that the sole basis for the Tax Assessor’s denial of the 100% disabled veteran’s exemption was that Mr. Hennefeld, as a joint tenant with Mr. O’Dell, did not own 100% of the subject property. The Township therefore only approved a 50% disabled veteran’s exemption proportionate to what the Township believed to be Mr. Hennefeld’s percentage of ownership. That was consistent with how the Township has approved the Plaintiffs’ disabled veteran’s exemption since 1985.
*188 The Plaintiffs point out that there is no statutory definition of the term “own” in the context of the Exemption Statute, and the court has found no published court opinion interpreting the ownership interest of a veteran under that statute.[17] The Plaintiffs contend that the Exemption Statute’s definition of “dwelling house” (N.J.S.A. 54:4-3.33) simply requires that the premises be “owned” by the qualified disabled veteran in order for the disabled veteran’s exemption to apply.
The court finds that the term “own” within the context of the Exemption Statute should be afforded its plain meaning. See N.J.S.A 1:1-1 (statutes should be given their generally accepted meaning “unless inconsistent with the manifest intent of the legislature”). Clearly the Legislature did not intend to create a greater ownership interest in the subject property beyond what the Plaintiffs had acquired by deed. Therefore to determine the Plaintiffs’ ownership interest in the subject property, the court must look to how they hold title thereto.
When the Plaintiffs purchased the subject property on September 9, 1985, they took title as joint tenants with right of survivor-ship. This is how the Plaintiffs held title when they filed their application for the disabled veteran’s exemption with the Tax Assessor on January 12, 2004 and when they were denied the full exemption on March 1, 2004. However, based upon them civil union in Vermont and marriage in Canada, the Plaintiffs re-conveyed the subject property to themselves as tenants by the entirety on March 29, 2004.
Black’s Law Dictionary defines a joint tenancy as a:
*189 Type of ownership of real or personal property by two or more persons in which each owns an undivided interest in the tohole and attached to which is the right of survivorship.
[Black’s Law Dictionary, 1465 (6th ed.1990) (emphasis added.) ]
Under New Jersey case law, the “four unities of interest” are required to create a joint tenancy, i.e. title, time, possession, and interest. Gauger v. Gauger, 73 N.J. 538, 542, 376 A.2d 523 (1977); Brodzinsky v. Pulek, 75 N.J.Super. 40, 49-50, 182 A.2d 149 (App.Div.1962), certif. den. 38 N.J. 304, 184 A.2d 419 (1962); 2 American Law of Property, § 6.2, at 8-9 (A.J. Casner ed.1952). Survivorship under a joint tenancy may be terminated unilaterally since, “ ‘either of the owners may at his pleasure, dispose of his share and convey it to a stranger, who will hold undivided, and in common with the other owner.’ ” Gauger v. Gauger, supra, 73 N.J. at 543, 376 A.2d 523.
Black’s Law Dictionary defines a tenancy by the entirety as:
A tenancy which is created between a husband and wife and by which together they hold title to the whole with right of survivorship so that, upon death of either, other takes whole to exclusion of deceased heirs... It is essentially a “joint tenancy, ” modified by the common-law thewy that a husband and wife are one perso'n, and survivorship is the predominant and distinguishing feature of each____ Neither party can alienate or encumber the property without the consent of the other.
[Black’s Law Dictionary, 1465 (6th ed.1990), citations omitted (emphasis added.) ]
Historically,
[t|he unique form of concurrent ownership at common law, labeled estates by the entirety, may be traced into antiquity at least as far back as the 14lh and 15th Centuries. 3 Holdsworth, History of the English Law (3d ed.1928), 128; Kepner, ‘The Effect of an Attempted Creation of an Estate by the Entirety in Unmarried Grantees, 6 Rutgers L.Rev. 550 (1952). The estate was unique because of the common-law concept of unity of husband and wife and the positing of that unity in the person of the husband during coverture. Putnam, “The Theory of Estates by the Entirety,’ 4 Southern L.Rev. 91 (1879). A husband and wife cannot hold by moieties [i.e. in halves] or in severalty, said Littleton, ‘and the cause is, for that the husband and wife are but one person in law. * * * ’ Coke on Littleton, see. 291. Blackstone, in his judicial capacity, noted:
‘This estate (entirety) differs from joint-tenancy, because joint-tenants take by moieties, and are each seised of an undivided moiety [i.e. half] of the whole, per my et per tout [i.e. by that half and by the whole], which draws after it the incident of survivorship or jus accrescendi [i.e. the right of survivorship], unless either party chooses in his life-time to sever the jointure. But husband and wife, being *190 considered in law as one person, they cannot, during the coverture take separate estates; and therefore upon a purchase made by them both, they cannot be seised by moieties, but both and each has the entirety. They are seised of their respective moieties, but both and each has the entirety. They are seised per tout, and not per my.' Green v. King, 2 Wm. Blackstone 1211, 1214, 96 Eng. Rep. 713, 714 (C.P.1777).
[King v. Greene, 30 N.J. 395, 400, 153 A.2d 49 (1959).]
“[T]he only distinction between a joint tenancy and a tenancy by the entirety at common law was that survivorship could not be affected by unilateral action in the latter estate.” Id. at 401, 158 A.2d 49 (emphasis added).
Certain aspects of common law tenancy by the entirety can still be found in contemporary New Jersey law. For example, a tenancy by the entirety “can only exist between husband and wife.” Wyckoff v. Young Women’s Christian Ass’n, supra, 37 N.J.Super. at 281, 117 A.2d 162 (emphasis added). Furthermore, in a tenancy by the entirety each tenant holds the entire property together with the other spouse, see Gauger v. Gauger, supra, 73 N.J. at 544, 376 A.2d 523; see also Freda v. Commercial Trust Co. of New Jersey, supra, 118 N.J. 36, 570 A.2d 409 (1990), and “survivorship [still] exists as at common law and is indestructible by unilateral action.” King v. Greene, supra, 30 N.J. at 412, 153 A.2d 49.
In Balazinski v. Lebid, 65 N.J.Super. 483, 168 A.2d 209 (App. Div.1961), the Appellate Division held that “a conveyance of real estate to a man and woman, who are not lawfully husband and wife at the time of the conveyance, cannot create a tenancy by the entirety.” Id. at 488, 168 A.2d 209. The Plaintiffs have not persuaded this court that a same-sex couple should be treated any differently in this regard. Since this court has determined that the Plaintiffs’ Canadian marriage could not be recognized under New Jersey law or public policy, and since the validity of their Vermont civil union pursuant to the DPA would not mandate recognition of Vermont’s law allowing the Plaintiffs to hold title to real estate as tenants by the entirety, then the Plaintiffs’ deed conveying the subject property to themselves as tenants by the entirety cannot be recognized and is therefore invalid. The court *191 finds that the Plaintiffs “own” the subject property as joint tenants with right of survivorship.
VI. Generally, Joint Tenants are entitled to only a Proportional Disabled Veteran’s Exemption.
The Plaintiffs argue that regardless of whether they own the subject property as tenants by the entirety or as joint tenants with right of survivorship, Mr. Hennefeld as a qualified disabled veteran who “owns” the subject property, is entitled to the 100% disabled veteran’s exemption as a matter of law. The Plaintiffs point to other New Jersey statutory schemes which they contend support the argument that Mr. Hennefeld sufficiently owns the subject property warranting a 100% disabled veteran’s exemption.
The Plaintiffs specifically cite N.J.S.A. 54:4-8.11, which entitles every war veteran, regardless of disability, and the surviving spouse of that veteran, to an annual deduction in property taxes assessed against any property owned by such veteran. Plaintiffs point in particular to a portion of N.J.S.A. 54:4-8.18 which provides that “[pjroperty held by husband and wife, as tenants by the entirety, shall be deemed to be wholly owned by each tenant.” Id. (emphasis added.) However, the Plaintiffs cite these statutes under the premise that they own the subject property as tenants by the entirety. While the court has already rejected that premise for the reasons set forth In Section V above, the statutes which the Plaintiffs have cited are nevertheless revealing with regard to their rights as joint tenants with right of survivorship.
Both N.J.S.A. 54:4-8.11 and N.J.S.A. 54:4-8.18 are provisions within, what this court will refer to as the “Veterans and Widows Act” N.J.S.A. 54:4-8.10 to — 8.24. The history of the Veterans and Widows Act can be traced back to L. 1951, c. 184 (repealed and replaced by L. 1963, c. 171), during the time of the Korean Conflict, when (similar to the adoption of the Exemption Statute) same-sex marriages, civil unions, or domestic partnerships, were never contemplated by the Legislature. The authority for the original version of the Veterans and Widows Act can be found in Article VII, § 1, ¶ 2 of the Constitution of 1947, providing for “preferential treatment in the civil service to such persons ‘in time *192 of war’ ”, Bashwiner v. Police and Firemen’s Retirement System, 68 N.J.Super. 1, 12, 171 A.2d 331 (App.Div.1961), as well as Article 8, § 1, ¶2, generally providing in part that “[ejxemption from taxation may be granted only by general laws.” N.J. Const, art. 8, § 1, ¶2.
In 1953, New Jersey’s Constitution was amended in part to provide a “tax exemption to honorably discharged veterans who served ‘in time of war or of other emergency as ... defined by the Legislature.’ ” Bashuwiner v. Police and Firemen’s Retirement System, supra, 68 N.J.Super. at 12, 171 A.2d 331; N.J. Const. art. 8, § 1, ¶ 3. This amendment provided the primary basis for the current version of the Veterans and Widows Act (L. 1963, c. 171, as amended).
In Section V of this opinion the court determined that the Plaintiffs hold title to the subject property as joint tenants with right of survivorship. By framing their argument solely in the context that they hold title as tenants by the entirety, the Plaintiffs ignore the critical language of N.J.S.A 54:4-8.18, specifically limiting the amount of a veteran’s deduction that joint tenants can claim under the Veterans and Widows Act. That portion of N.J.S.A. 54:4-8.18 which the Plaintiffs failed to address provides:
Where title to property as to which a veteran’s deduction is claimed is held by claimant and another or others, either as tenants in common or as joint tenants, a claimant shall not be allowed a veteran’s deduction in an amount in excess of his or her proportionate share of the taxes assessed against said property, wliich proportionate share, for the purposes of this act, shall be deemed to be equal to that of each of the other tenants, unless the conveyance under which title is held specifically provides unequal interests, in which event claimant’s interest shall be as specifically established in said conveyance.
[Ibid, (emphasis added.) ]
This language, together with that part of N.J.S.A. 54:4-8.18 cited by the Plaintiffs, provides much insight into the Township’s longstanding practice, as explained by counsel in oral argument, of recognizing the full disabled veteran’s exemption when the co-owners are married, but only recognizing a proportional exemption when the co-owners are not married.
Even though the Exemption Statute does not contain the same or similar language as the Veterans and Widows Act, N.J.S.A *193 54:4-8.18, the parallels between the two laws cannot be ignored. Both the current versions of the Exemption Statute and the Veterans and Widows Act are founded in and authorized by Art. VIII, § 1, ¶ 3 of the Constitution of 1947. Both laws have been similarly interpreted by the Appellate Division and concern a reduction in property taxes for veterans and their surviving spouses. See Bor. of Wrightstown v. Medved, 193 N.J.Super. 398, 403-04, 474 A.2d 1077 (App.Div.1984) (finding that “Art. VIII, § 1, ¶ 3 of the New Jersey Constitution (prior to its amendment in 1983), N.J.S.A. 54:4-3.30 and 54:4-8.10 et seq. all [violated] the Fourteenth Amendment of the United States Constitution insofar as they [withheld] from spouses of female veterans the tax relief given spouses of male veterans”).
Furthermore, listed as one of five requirements for the disabled veteran’s exemption in the “General Instructions” to Form D.V.S.S.E. entitled: CLAIM FOR PROPERTY TAX EXEMPTION ON DWELLING HOUSE OF DISABLED VETERAN OR SURVIVING SPOUSE OF DISABLED VETERAN OR SERVICEPERSON (N.J.S.A. 54:4-30.30 et seq.; L.1948, c. 259 as amended)[18], is that the disabled veteran must “wholly own or hold legal title to the dwelling house.” Form D.V.S.S.E. (emphasis added). In the Veterans and Widows Act, the very section of N.J.S.A. 54:4-8.18 cited by the Plaintiffs provides that, “[pjroperty held by husband and wife, as tenants by the entirety, shall be deemed to be wholly owned by each tenant.” Ibid, (emphasis added). It does not provide that property held as joint tenants shall be deemed to be wholly owned.[19]
*194 This court finds no basis for interpreting the Exemption Statute to mean that a qualified disabled veteran who holds title as a joint tenant is entitled to a 100% disabled veteran’s exemption, when clearly under the Veterans and Widows Act, a qualified veteran who also holds title as a joint tenant is only entitled to a proportionate share of a veteran’s deduction.
Additional legislative precedent that supports a finding of proportionate interests as between joint tenants can also be found in the NJ SAVER and Homestead Rebate Act (N.J.S.A. 54:4-8.57 to — 8.66(e)). In regard to eligibility for the NJ SAVER rebate, N.J.S.A. 54:4-8.58(b), provides in part:
If title to a homestead is held by more than one individual, other than a husband and wife, as joint tenants or tenants in common, each individual shall be allowed an NJ SAVER rebate ... only in relation to the individual’s proportionate share of interest in the title. Title shall be presumed to be held in equal shares among all co-owners ... [unless satisfactorily demonstrated otherwise],
[N.J.S.A 54:4-8.58(b)(c) ]
A homestead held by husband and wife, as tenants by the entirety, shall be deemed wholly owned by each tenant ...
[.N.J.S.A 54:4-8.58(b)(e) (emphasis added.) ]
A related statute, although not specifically defined as part of the NJ SAVER and Homestead Rebate Act provides in part that:
When title to a homestead as to which a homestead property tax reimbursement is claimed is held by an eligible claimant and another or others, either as tenants in common or as joint tenants, the eligible claimant shall not be allowed a homestead property tax reimbursement in an amount in excess of his or her proportionate share of the taxes assessed against the homestead, which proportionate share ... shall be deemed to be equal to that of each of the other tenants, unless [otherwise shown],
[N.J.S.A. 54:4-8.72 (emphasis added.) ]
Accordingly, the court finds that joint tenants are generally entitled to only a proportionate share of the disabled veteran’s exemption under the Exemption Statute. Pursuant to this finding, the court also rejects the representation of the Township’s counsel made at oral argument, that a married couple would be entitled to a 100% disabled veteran’s exemption no matter how they hold title to their “dwelling house” as defined by N.J.S.A. 54:4-3.33. To the contrary, the court finds that married couples who own property as joint tenants instead of tenants by the entirety would only be entitled to a proportionate share of the *195 disabled veteran’s exemption like any other joint tenants, assuming all other qualifications of the Exemption Statute are satisfied.
VII. New Jersey’s Domestic Partnership Act (DPA)
While the DPA was approved on January 12, 2004, it did not become effective for another 180 days. During that 180 period, the Plaintiffs filed an application for a 100% disabled veteran’s exemption, were denied that full exemption, subsequently re-conveyed the subject property to themselves as tenants by the entirety, and then appealed the denial to the County Board. The DPA became effective on July 10, 2004, and the Plaintiffs filed as domestic partners pursuant to the DPA on July 12, 2004.
Thus far in this opinion, the court has concluded that (1) the Plaintiffs Canadian marriage cannot be recognized in New Jersey, (2) their Vermont Union does not mandate New Jersey’s recognition of certain rights reserved to married persons, such as the ability to hold title to property as tenants by the entirety, (3) the Plaintiffs hold title to (i.e. own) the subject property as joint tenants with right of survivorship and, (4) joint tenants are generally entitled to only a proportionate share of the disabled veteran’s exemption. However, to ascertain the Plaintiffs’ rights as registered domestic partners in New Jersey, the court must view these conclusions in conjunction with the legislative intent expressed in the legislative findings and declarations, and the Committee Statement of the DPA.
The full legislative findings and declarations embodied in N.J.S.A. 26:8A-2, provide:
a. There are a significant number of individuals in this State who choose to live together in important personal, emotional and economic committed relationships with another individual;
b. These familial relationships, which are known as domestic partnerships, assist the State by their establishment of a private network of support for the financial, physical and emotional health of their participants;
c. Because of the material and other support that these familial relationships provide to their participants, the Legislature believes that these mutually supportive relationships should be formally recognized by statute, and that certain rights and benefits should be made available to individuals participating in them, including: statutory protection against various forms of discrimination against domestic partners; certain visitation and decision-making rights in a health care setting; *196 and certain tax-related benefits; and, in some cases, health and pension benefits that are provided in the same manner as for spouses;
d. All persons in domestic partnerships should be entitled to certain rights and benefits that are accorded to married couples under the laws of New Jersey, including: statutory protection through the “Law Against Discrimination,” P.L. 1945, c. 169 (0.10:5-1 et seq.) against various forms of discrimination based on domestic partnership status, such as employment, housing and credit discrimination; visitation rights for a hospitalized domestic partner and the right to make medical or legal decisions for an incapacitated partner; and an additional exemption from the personal income tax and the transfer inheritance tax on the same basis as a spouse. The need for all persons who are in domestic partnerships, regardless of their sex, to have access to these rights and benefits is paramount in view of them essential relationship to any reasonable conception of basic human dignity and autonomy, and the extent to which they will play an integral role in enabling these persons to enjoy their familial relationships as domestic partners and to cope with adversity when a medical emergency arises that affects a domestic partnership, as was painfully but graphically illustrated on a large scale in the aftermath of the tragic events that befell the people of our State and region on September 11, 2001;
e. The Legislature, however, discerns a clear and rational basis for making certain health and pension benefits available to dependent domestic partners only in the case of domestic partnerships in which both persom are of the same sex and, are therefore unable to enter into marriage with each other that is recognized by New Jersey law, unlike persons of the opposite sex who are in a domestic partnership but have the right to enter into a marriage that is recognized by Stale law and thereby have access to these health and pension benefits; and
f. Therefore, it is the public policy of this State to hereby establish and define the rights and responsibilities of domestic partners.
[N.J.S.A 26:8A-2 (emphasis added.) ]
The Committee Statement provides further insight;
Currently, a significant number of New Jersey residents live in families in which the heads of household are unmarried. Despite their interdependence and mutual commitment, these families do not have access to the protections and benefits offered by the law to married couples; nor do they bear legal obligations to each other, no matter how interdependent them relationship. This bill seeks to redress this oversight and provide certain benefits to, and enforce certain obligations within, these families.
[Assemb. Appropriations Comm., Assemb. No. 3743 — L. 2003, c. 246, following N.J.S.A. 26:8A-1 (emphasis added.) ]
In adopting the DPA, the Legislature clearly recognized that “domestic partnership is a status distinct from marriage.” As-semb. Appropriations Comm., Assemb. No. 3743 — L. 2003, c. 246, following N.J.S.A. 26:8A-1. Equally clear however, is the Legislature’s intention that, “all persons in domestic partnerships should be entitled to certain rights and benefits that are accorded to *197 married couples ...” N.J.S.A. 26:8A-2(d). While the DPA was not directed only to same-sex domestic partners, in it certain health and pension benefits were made available only to same-sex domestic partners. N.J.S.A 26:8A-2(e). The reason the Legislature gave for singling-out same-sex domestic partners in this regard is that “[they] ... are ... unable to enter into a marriage with each other that is recognized by New Jersey law, unlike persons of the opposite sex who are in a domestic partnership but have the right to enter into a marriage that is recognized by State law ...” Ibid. Without specific reference to same-sex couples, the Committee Statement further explains that unmarried domestic partners in general “do not have access to the protections and benefits offered by law to married couples,” and goes on to explain that the DPA, “seeks to redress this oversight.” Assemb. Appropriations Comm., Assemb. No. 3743, L. 2003, c. 246, following N.J.S.A. 26:8A-1.
Since the inability to many under New Jersey law was specifically cited in the DPA as the basis for granting certain health and pension benefits only to same-sex domestic partners, N.J.S.A. 26:8A-2(e), it is conceivable that the same reasoning could apply under the present facts. The determining factor is whether the inability of same-sex domestic partners to receive a 100% disabled veteran’s exemption because of the limitations on how they can hold title to property, was envisioned by the Legislature when it declared that “[a]U persons in domestic partnerships should be entitled to certain rights and benefits that are accorded to married couples under the laws of New Jersey ...” N.J.S.A. 26:8A-2(d). This court finds that it was.
The DPA extends a general list of “certain rights and benefits” to domestic partners at N.J.S.A. 26:8A-2(c). Domestic partners are also granted a specific list of “certain rights and benefits ... accorded to married couples” at N.J.S.A. 26:8A-2(d). In each of these sections of the DPA, the Legislature utilized the word “including” immediately preceding the list of “certain rights and benefits.” See N.J.S.A 26:8A-2(c) and — 2(d). The use and meaning of the word “including” in legislation was addressed in Boardwalk Regency Corp. v. New Jersey Casino Commission, 352 *198 N.J.Super. 285, 800 A.2d 157 (App.Div.2002). In that case, the court “view[ed) the word ‘including’ as merely illustrative, not limiting.” See Jackson v. Concord Co., 54 N.J. 113, 126-27, 253 A.2d 793 (1969) (holding that the word “include” is a word of enlargement, not limitation, and that the examples specified were merely illustrative); see also Central R. Co. of New Jersey v. Dir. Div. of Tax Appeals of Dept. of Treasury, 8 N.J. 15, 83 A.2d 527 (1951); Levitt & Sons, Inc. v. Div. Against Discrimination, 31 N.J. 514, 158 A.2d 177 (1960); Fraser v. Robin Dee Day Camp, 44 N.J. 480, 210 A.2d 208 (1965).
Furthermore, the Legislature used specific language of limitation in another section of the DPA. With regard to the obligations of domestic partners the DPA provides at N.J.S.A 26:8A-6(a):
The obligations that two people have to each other as a result of creating a domestic partnership shall be limited to the provisions of this act, and those provisions shall not diminish any right granted under any other provision of law. [Ibid, (emphasis added.) ]
Clearly the Legislature could have specifically limited the “certain rights and benefits” granted to domestic partners under N.J.S.A. 26:8A-2(c) and — 2(d), in the same manner as it specifically limited the obligations of domestic partners under N.J.S.A. 26:8A-6(a). However, the Legislature chose not to do so.
Accordingly this court finds that the lists of “certain rights and benefits,” contained in N.J.S.A. 26:8A-2(c) and — 2(d) are not exclusive. Rather, they merely demonstrate, by way of example, the lands of rights and benefits the Legislature intended to be extended to domestic partners under the DPA.
Furthermore, the Legislature intended to make “certain tax-related benefits” available to domestic partners. N.J.S.A. 26:8A-2(c). The court recognizes, however, that the disabled veteran’s exemption is not specifically listed among those “tax-related benefits.” Ibid. What the DPA does provide to domestic partners is “an additional exemption from the personal income tax and the transfer inheritance tax on the same basis as a spouse.” N.J.S.A. 26:8A-2(d) (emphasis added). These “tax-related benefits” are specifically listed among the “certain rights and benefits ... accorded to married couples” Ibid. Since the list is not exclusive, *199 the court concludes that the DPA contemplated domestic partners would be entitled to other tax exemptions “accorded to married couples,” N.J.S.A. 26:8A-2(d), but were not specifically listed. This is particularly true for same-sex domestic partners in those instances where they are denied “certain rights and benefits ... accorded to married couples”, N.J.S.A. 26:8A-2(d), specifically because “[they] ... are ... unable to enter into a marriage with each other that is recognized by New Jersey law, unlike persons of the opposite sex ...,” N.J.S.A. 26:8A-2(e), and therefore “do not have access to the protections and benefits offered by law to married couples.” Assemb. Appropriations Comm., Assemb. No. 3743, L. 2003, c. 246, following N.J.S.A 26:8A-1.[20]
The Plaintiffs are not married in the eyes of New Jersey and therefore cannot hold title as tenants by the entirety. Wyckoff v. Young Women’s Christian Ass’n, supra, 37 N.J.Super. at 281, 117 A.2d 162. This conclusion is unaltered by the Plaintiffs’ Civil Union in Vermont, a state, unlike New Jersey, where domestic partners are permitted by law to hold title as tenants by the entirety. 15 Vt. Stat. Ann. § 1204(e)(1). The Plaintiffs in fact hold title as joint tenants with right of survivorship. A qualified disabled veteran who shares ownership in his or her “dwelling house” as a joint tenant, is only entitled to a proportionate share of the disabled veteran’s exemption. This is true regardless of whether the joint tenants are the same-sex, the opposite sex, or married but hold title as joint tenants instead of tenants by the entirety. However, a qualified disabled veteran would be entitled to a 100% exemption if he or she was either (1) the sole owner, or (2) married and held title with his or her spouse as tenants by the *200 entirety. The other requirements of the Exemption Statute notwithstanding, clearly for the Plaintiffs’ purposes, the key to receiving the full exemption is a recognition that their ownership interest in the subject property should be treated in the same fashion as is “accorded to married couples” who hold title as tenants by the entirety. N.J.S.A. 26:8A-2(d).
The current status of New Jersey law provides a distinct advantage for married joint tenants and marriage eligible opposite sex joint tenants: married joint tenants can convert their title interest to tenancy by the entirety; the same is true for marriage eligible opposite sex joint tenants because they have the option of marriage (assuming their marriage is not prohibited under law). The DPA makes clear that same-sex couples cannot marry. N.J.S.A. 26:8A-2(c). One option available to the Plaintiffs to qualify for a 100% disabled veteran’s exemption would be to transfer title to the sole ownership of Mr. Hennefeld. In the court’s view, that option clearly defeats the express intent of the DPA to “support the many adult individuals in this State who share an important personal, emotional and committed relationship with another adult.” Assemb. Appropriations Comm., As-semb. No. 3743, L. 2003, c. 246, following N.J.S.A. 26:8A-1.
The proposed legislative findings and declarations contained in pending legislation that is intended to amend the Exemption Statute (i.e. Assemb. No. 3629, introduced January 10, 2005), provide in part that:
The “Domestic Partnership Act” did not address the issue of the totally disabled veteran’s property tax exemption which grants to a veteran who became totally and permanently disabled as the result of wartime service in a branch of the United States Armed Services and to his or her spouse a 100% exemption from the payment of real property taxes on their home.
[Assemb. No. 3629, § 1(c).] [21]
*201 This proposed finding does not alter the court’s conclusion that the inability of same-sex domestic partners to receive a 100% disabled veteran’s exemption because of the limitations on how they can hold title to property was envisioned by the Legislature in adopting the DPA. The Supreme Court has held that “[p]ending legislation ... is of little value in determining legislative intent” Koch v. Dir., Div. of Taxation, 157 N.J. 1, 13, 722 A.2d 918 (1999), and “[t]he inquiry ... entails the search for legislative intent, not a search for legislators’ actual intent.” GE Solid State v. Dir., Div. of Taxation, 132 N.J. 298, 320, 625 A.2d 468 (1993), citing Riggs v. Long Beach Tp., 109 N.J. 601, 613, 538 A.2d 808 (1988), (finding that “Courts generally will not inquire into legislative motive ... but will consider evidence about the legislative purpose ... Although the distinction between motive and purpose can be fuzzy, ‘motive’ ordinarily addresses the subjective considerations that move a legislator, and ‘purpose’ speaks to the goals to be achieved”).
However, despite the language of this finding and what it may suggest, as well as the language of the attached statement that further provides “[tjhis bill would extend eligibility to receive the total property tax exemption provided to 100% disabled veterans and their spouses under State law to 100% disabled veterans and their same-sex domestic partners,” Statement to Assemb. No. 3629, the proposed legislation curiously proposes no substantive changes to section (a) of the Exemption Statute, i.e. N.J.S.A. 54:4-3.30(a) which sets forth the basic qualifications for the disabled veteran’s exemption itself. The substance of the pending legislation, despite the representations of the proposed findings and *202 statement, is solely confined to conferring the same rights of a surviving spouse of a qualified disabled veteran to a similarly situated surviving domestic partner under N.J.S.A. 54:4-3.30(b) and (c), and N.J.S.A 54:4-3.31 of the Exemption Statute. Furthermore, it is unclear whether the pending legislation is intended to clarify or modify the Exemption Statute.
Accordingly, it is the decision of this court to award a 100% disabled veteran’s exemption to the Plaintiffs pursuant to the Exemption Statute. In so ruling, the court does not recognize the Plaintiffs’ Canadian marriage, nor any right under New Jersey law for Plaintiffs to hold title to the subject property as tenants by the entirety. This ruling should not be interpreted as equating, or otherwise eliminating any distinction between, property held by same-sex domestic partners as joint tenants with right of survivor-ship, and property held by married couples as tenants by the entirety. Rather, within the intent and meaning of the DPA the court is treating the Plaintiffs’ ownership interest in the subject property in the same fashion as is “accorded to married couples,” for the express purpose of the disabled veteran’s exemption under the Exemption Statute. This determination is consistent with other tax exemptions that were made specifically applicable to domestic partners under the DPA. This decision does not provide joint tenants generally with more than a proportional share of the disabled veteran’s exemption, and is specifically limited to same-sex domestic partners registered or otherwise recognized under, and subject to the provisions of, the DPA.
This decision also reaffirms that “exemptions from local property taxation must be strictly construed.” St. Luke’s Village Inc. v. Peapack & Gladstone Bor., supra, 11 N.J.Tax at 80 (Tax 1990). It does not expand the disabled veteran’s exemption to same-sex domestic partners, but rather, and more importantly, this decision fulfills “the purpose of the veterans’ tax-relief legislation ... ‘to compensate veterans for the experiences of war.’ ” Bor. of Wrightstown v. Medved, supra, 193 N.J.Super. at 402, 474 A.2d 1077. A qualified veteran’s marital status is not, and has never been, an issue in determining eligibility for the disabled veteran’s exemption under the Exemption Statute. N.J.S.A 54:4- *203 3.30(a). The Exemption Statute only addresses marriage in the context of a surviving spouse. See N.J.S.A. 54:4-3.30(b) to (d). The court’s decision is limited to interpreting the Plaintiffs’ ownership interest in the subject property for purposes of the Exemption Statute, and how that interest is treated under the provisions of the DPA. Furthermore, the court observes that “the impact ... on municipal budgets would appear slight.” Bor. of Wrightstown v. Medved, supra, 193 N.J.Super. at 405, 474 A.2d 1077.
VIII. Retroactive Application of the DPA
The Plaintiffs did not specify a date from which the 100% veteran’s exemption should commence. The Township objects to any retroactive application prior to July 12, 2004, the date the Plaintiffs registered as domestic partners under the DPA. The general rule prohibiting retroactive application of statutes was designed to give the public fair notice of the law it is expected to follow. See Keil v. Nat. Westminster Bank Inc., 311 N.J.Super. 473, 482-83, 710 A.2d 563 (App.Div.1998). The Supreme Court of New Jersey has stated that:
Generally, we favor interpretation of statutes that afford prospective application only. However, where there is an “unequivocal expression of contrary legislative intent,” we will recognize the Legislature’s determination. In discerning the legislative intent, we look first to the plain terms of the statute. “If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act’s literal terms to divine the Legislature’s intent.”
[Nobrega v. Edison Glen Associates, 167 N.J. 520, 536, 772 A.2d 368 (2001) (citations omitted).]
The DPA became "effective 180 days following enactment of L.2003, c. 246, approved January 12, 2004." N.J.S.A 26:8A-1 to — 12 (emphasis added). The effective date has been calculated to be July 10, 2004. The court determined in Section VII above, that the Plaintiffs are entitled to the 100% disabled veteran’s exemption, because they registered as domestic partners under the DPA and therefore, their ownership interest in the subject property should be treated in the same fashion as is “accorded to married couples.” N.J.S.A 26:8A-2(d). Since the Plaintiffs were not registered as domestic partners before July 12, 2004, their ownership interest in the subject property could not have been *204 treated in the same fashion as is “accorded to married couples” before that date.
The court finds that (1) the public was given fair notice that the DPA would be enacted on July 10, 2004, and (2) the Plaintiffs were not eligible for a 100% exemption prior to July 12, 2004 (the date they registered under the DPA).
Judgment will be entered granting the Plaintiffs a 100% disabled veteran’s exemption under N.J.S.A. 54:4-8.80 as of July 12, 2004. To the extent that the Plaintiffs seek a full exemption for any period prior to that date, their motion is denied.

 An applicant seeking a disabled veteran's exemption must "[f]ile ... with the municipal tax assessor at any time during the tax year ... [and] may appeal any unfavorable determination by the assessor to the County Board of Taxation annually on or before April 1." See General Instructions, Form D.V.S.S.E. on the New Jersey Division of Taxation Website, available at http://www.state.nj.us/trea-sury/taxation/lpt/lptdisv.htm (last visited January 25, 2005). See also N.J.S.A. 54:3-21. The assessment date for tax year 2004 (i.e. October 1, 2003) is therefore not relevant to this matter. The Plaintiffs have not indicated a specific date from which the 100% disabled veteran's exemption should commence. However,
[pjartial or prorated exemption is permitted for the remainder of any taxable year from the date ownership or title to the dwelling house is acquired provided all other eligibility requirements are met. For example, where application is filed on June 1st of the tax year for exemption on a dwelling house acquired on February 14th of the tax year, the assessed value is to be prorated for taxation purposes so that 44/365th's of the total assessment would be taxable and 321/365th's would be exempt.
[Ibid., (emphasis added.) ]

 It appears that Plaintiffs applied for the 100% disabled veteran’s exemption in 1985 and were only awarded 50%. Paragraph 4 of the Complaint indicates that "[apparently, the 50% exemption represents Mr. Hennefeld’s portion of the taxes on the property.” According to a website news article entitled, Complaint Filed Over Denial of DP Tax Exemption (Sept. 23, 2004), in 1985, "then-Tax Assessor Jean R. Carodonna granted a partial tax exemption for the [Plaintiffs] on the basis that Hennefeld had '100 percent of half ownership.' " Available at http://www.stephenhyland.com/news/archive/2004/09/12.

 Plaintiffs could have appealed "to the County Board of Taxation annually on or before April 1.” They did not. See General Instructions, Form D.V.S.S.E. on the New Jersey Division of Taxation Website, available at http://www.state.nj.us/treasuiy/taxation/lpt/lptdisv.htm (last visited January 25, 2005). See also N.J.S.A. 54:3-21.

 Assembly, No. 3629; introduced January 10, 2005. See Tom Hester, "Disabled vets' gay partners targeted for a tax break," The Star Ledger, March 8, 2005, at 16.

 The Freedom to Marry, N.Y. Times, April 7, 1996, at § 4, p. 10, col. 1 (opining that "the question of opening the institution of marriage to homosexuals is the subject of an emotional debate taking place at family dinner tables, state legislatures and in the press/')

 Goodridge v. Dept. of Public Health, 440 Mass. 309, 798 N.E.2d 941 (Mass. 2003). However, it is noted that an initiative petition for a constitutional amendment banning same-sex marriage is pending in Massachusetts. Albano v. Attorney General, 437 Mass. 156, 769 N.E.2d 1242 (Mass.2002). It is further noted that a New York Supreme Court Justice recently found that 'a law banning same-sex marriage violates the state constitution.''; Judge strikes down New York's ban on same-sex marriage, available at http://www.usatoday.com/news/nation/2005-02-04-new-york — x.htm (last visited February 4, 2005). See also Hernandez v. Robles, 7 Misc.3d 459, 794 N.Y.S.2d 579, 2005 WL 363778 (N.Y.Sup. Feb. 4. 2005).

 “[Tjhe passage of the Marriage Amendment was probably the only way that the people of Hawaii could block the judicially-mandated issuance of marriage licenses to same-sex couples.'' Coolidge, David Orgon, The Hawaii Marriage Amendment: Its Origins, Meaning and Fate, 22 U. Haw L.Rev. 19, 21 (2000).

 Arkansas, Georgia, Kentucky, Michigan, Mississippi, Montana, North Dakota, Ohio, Oklahoma, Oregon, and Utah. See http://www.cnn.com/ELECTION/2004/pages/results/ballot.measures/ (last visited March 10, 2005).

 Demian, Legal Marriage: The First Impediment (2004), Partners for Gay & Lesbian Couples, available at http://www.buddybuddy.com/damian02.html (last visited January 28, 2005); See also Cox, Professor Barbara J., A (Personal) Essay on Same-Sex Marriage, National Journal of Sexual Orientation Law, Vol. 1, Issue 1, Maty Sylla, ed.:
Arguing against same-sex marriage in her article. Since When is Marriage a Path to Liberation?, Paula Ettelbrick believes that it will not liberate lesbians and gay men but will make us more invisible, force assimilation, and undermine the lesbian and gay civil rights movement____Ruth Colker in Marriage echoes Ettbrick’s concerns, arguing that rather than expanding the couples who can marry, we should change the institution of marriage to eliminate its marriage-dependent benefits, so that people will choose it for symbolic, rather than legal or utilitarian reasons____Thomas Stoddard, in Why Gay People Should Seek the Right to Marry, while recognizing the oppressive nature of marriage in its traditional form, believes that lesbians and gay men should be able to choose to marry and the civil rights movement should seek full recognition of same-sex marriages ... [because of] the practical advantages associated with marriage-related benefits, ... marriage is the issue most likely to end discrimination against lesbians and gay men, and the ... right [to marry] will be the principle means toward eliminating marriage’s sexist trappings.
Yes, we must be aware of the oppressive history that weddings symbolize.... But I find it difficult to understand how two lesbians, standing together openly and proudly, can be seen as accepting that institution? What is more anti-patriarchal and rejecting of an institution that carries the patriarchal power imbalance into most households than clearly stating that women can commit to one another with no man in sight? With no claim of domination or control, but instead of equality and respect.

[Ibid.)

 "Same-sex marriage supporters in Florida announced [on January 25, 2005, six days after the U.S. District Court decision in Wilson v. Ake, that] they are giving up on their challenge to the federal Defense of Marriage Act (DOMA).” See Hunter, Melanie, Homosexual Advocates Drop Florida DOMA Challenge, available at http:www.cnsn ews.com/ViewPrin1.aspPPage — *Natiorr\Archive*20050 UNAT20050125b.html (last visited February 17, 2005).

 Note, however, that DOMA does not specifically address recognition of same-sex marriages legally entered into under the laws of a foreign country.

 A bill calling for a state constitutional amendment banning same-sex marriage has been introduced. ACR-212.

 Appellate Division Docket No. A2244-03T5.

 The DPA was adopted January 12, 2004; the Plaintiffs filed for the disabled veteran's exemption on January 17, 2004. The DPA was not effective until July 10, 2004.

 See also Devlin v. Philadelphia, 862 A.2d 1234 (Pa.2004) (holding in part that, under Philadelphia's ordinance, “Life Partnership is simply not the functional equivalent of marriage.").

 The court notes, however, that the ownership of a dwelling by a surviving spouse under N.J.S.A. 54:4-3.30 was addressed in Sheppard v. Willingboro Twp., 176 N.J.Super. 637, 1 N.J.Tax 530, 424 A.2d 478 (Tax 1980). In Sheppard, the Tax Court held that the surviving widow of a disabled veteran was the owner of the dwelling, within the purview of N.J.S.A. 54:4-3.30, where she held a dower interest in the property and was the personal representative of her deceased husband’s estate, and that she held legal, but not beneficial title to the remainder. Id. at 638-40, 424 A.2d 478.

 See http://www.state.nj.us/treasury/taxation/lpt/lptdisv.htm (last visited January 25, 2005).

 The Court also observes that the Notice provided to the Plaintiffs by the Tax Assessor, disallowing their claim for a 100% disabled veteran's exemption (attached to the complaint), was a form notice "promulgated" by the "Director, Division of Taxation in the Department of the Treasury." That Notice is entitled: NOTICE OF DISALLOWANCE OF CLAIM FOR VETERAN'S EXEMPTION/DEDUCTION (N.J.S.A. 54:3-3.30 et seq. and N.J.S.A. 54:4-810 et seq.). This form notice groups both the Exemption Statute and the Veterans and Widows Act together.

 While not controlling as discussed later, the language contained in Section 1(e) of the legislative findings and declarations of pending legislation to amend the Exemption Statute (i.e. Assemb. No. 3629) is instructive:
A clear and rational basis exists for extending eligibility to receive the veteran's property tax exemption only to totally disabled veterans and their same-sex domestic partners, because persons of the opposite sex who are in a domestic partnership have the right to enter into a marriage that is recognized by State law and thereby have access to this property tax exemption ...
[Assemb. No. 3629, § 1(e).]

 This section further provides that
The current law has been interpreted to require 100% ownership of the home by the totally disabled veteran, but considers ownership of the property with the veteran's spouse as meeting that total ownership requirement for eligibility to receive the property tax exemption. This interpretation denies the totally disabled veteran’s property tax exemption to a veteran who is part of a domestic partnership if the veteran owns the home together with a *201 domestic partner, because the domestic partner is not the veteran's spouse
[Assemb. No. 3629, § 1(c).]
This language suggests that a disabled veteran in a domestic partnership is completely denied the disabled veteran’s exemption. The present facts reveal that this is clearly not the case. The Plaintiffs have lived together in a same-sex committed relationship for about thirty years, and have owned the subject property jointly for about twenty years. Mr. Hennefeld is a qualified disabled veteran and has received a 50% disabled veteran’s exemption for the past twenty years.