FIAMINGO, J.T.C.
This matter is before the Tax Court on plaintiffs appeal of the decision of the Bergen County Tax Board affirming the assessment imposed on the subject property for tax year 2013. The complaint filed by plaintiff appeals an alleged denial of the Veter *346 an’s Exemption available to a surviving spouse under N.J.S.A. 54:4-3.30(b).
For the reasons stated more fully below, the Court will enter Judgment granting a Veteran’s Exemption for 50% of the assessed value of the dwelling house and curtilage determined in accordance with this opinion.

Procedural History and Findings of Fact

The following findings of fact are based on the evidence and testimony admitted at trial and the post-trial submissions of the parties.
Plaintiff Joan Hays is eighty-nine years of age and is the surviving spouse of Edwin Walter Hays, a 100% disabled veteran of World War II[1]. The municipality does not question Mr. Hays’ status as a 100% disabled veteran or the plaintiffs status as his surviving spouse and widow.
The subject property is commonly known as W. 143 Ridgewood Avenue, Paramus, New Jersey and is designated as Lot 7 in Block 6701 on the official tax map of the Borough of Paramus. The property is bordered by Ridgewood Avenue to the south and Paramus Road to the east where they intersect. Saddle River runs along a portion of the western edge of the property.
For the tax year 2013, the assessed value of the subject property was as follows:
Land $ 790,200
Improvements $ 616,100
Total $1,406,300
Plaintiff acquired the subject property at the time of her mother’s death sometime in 1995. Thereafter, in or about June, *347 1996, title to the property was conveyed by plaintiff to both she and her husband, as husband and wife. In or about February, 1997, the plaintiff and her husband executed a deed which converted ownership of the property to an equal tenancy in common. During Edwin Hays’ lifetime, all or a portion of the subject property was exempted from real property tax pursuant to the Veteran’s Exemption Statute, N.J.S.A. 54:4-3.30(a). [2]
Mr. Hays died on or about February 7, 2007. By deed dated May 8, 2008 his 50% interest as tenant in common in the subject property was conveyed to his children, as “remaining Co-Trustees pursuant to the Last Will and Testament of Edwin Walter Hays.[3]” As a result, after the veteran’s death, the owners of the subject property were the plaintiff and the Co-Trustees, as equal tenants in common. As of the valuation date, October 1, 2012, the ownership of the property had not changed.
The subject property is atypical for the Borough of Paramus, containing 4.39 acres and both residential and commercial uses. It is quite secluded and contains a wooded area along its rear border. There are two historic dwellings, one in which the plaintiff resides and the other being a rental property. In addition to the two dwellings, a farmer’s markeVnursery is located on the subject property where Paramus Road and Ridgewood Avenue intersect, which is operated by an unrelated third party. Both the *348 farmers’ market and the rental dwelling produce income to the property owners.
The main residence, in which the plaintiff resides, is an historic two-story Dutch colonial with a covered porch, back porch and full basement (the “main house”). The smaller house had previously been a mill, which was converted into a dwelling approximately 60 years ago (the “mill house”).
Upon its conversion from a mill to a residence, plaintiff along with Edwin Hays and their children occupied the mill house. At some point thereafter, the plaintiff and Mr. Hays relocated into the main house. Around that same time the mill house became a rental property and was leased to unrelated third parties. For the past several years the plaintiffs granddaughter and her husband have leased the mill house as their home.[4]
The area around the main house consists of a driveway, flower/vegetable gardens and a fish pond. The mill house is located beyond the gardens to the northwest of the main house. The wooded area is undeveloped and is located to the north of the two dwellings. Until recently the plaintiff maintained the gardens around the main house herself, but is currently physically unable to do so. The plaintiff has retained landscapers for that purpose and actively supervises them in their work. Plaintiff continues to enjoy the gardens around the property but does not utilize the wooded portion of the subject property for any reason. The mill house tenants do not use the gardens or pond by the main house and plaintiff does not use the mill house.
The plaintiffs witness testified that she estimated that the area around the main house which contained the gardens contained approximately 300 square feet, an estimate contested by the municipality. The plaintiff supplied no documentation to verify *349 the size of the area. An unauthentieated copy of a site plan was referenced over the objection of the defendant. The site plan was used solely for the purpose of providing the general outline of the subject property and general locations of the various structures.[5] The site plan did not depict the gardens or their locations.
The plaintiffs witness testified that the plaintiff contested the exemption only after attempts to obtain an explanation of whether an exemption had been allowed and, if so, how the amount of the exemption had been calculated, were unsuccessful.
The municipality moved to dismiss at the close of the plaintifPs ease. The court held that the plaintiff had produced sufficient evidence to establish that the plaintiff was entitled to an exemption under the statute and had alleged that none had been granted. The motion to dismiss was denied.
The defendant municipality presented its assessor as its witness. According to the assessor a veteran’s exemption had been allowed for the year under review. He stated that the determination of the amount of the allowable exemption was complicated by the fact that the property was not typical of other properties within the borough because of its large size, the existence of the historic homes, and the mix of commercial and residential uses located thereon. Moreover, there are no physical boundaries between the dwellings themselves or between the dwellings and the farmers’ market, making it difficult to determine where each use began and ended.
The assessor testified that for the year in question the allowable exemption had been calculated with reference to the veteran’s exemption statute in question, which grants an exemption for the dwelling house and “lot or curtilage whereon the same is erected”. He further testified that he consulted Black’s Law Dictionary for the definition of curtilage, which he maintained was defined as the land “immediately surrounding” a property. The assessor testified that an area of 75 feet by 125 feet had been allowed for *350 curtilage because these dimensions were the same as a “typical” residential lot in the Borough.
A reassessment was conducted in the Borough in 2003 and again in 2007. According to the assessor’s testimony, in 2003 the 4.39 acres of the subject property were assessed at $790,200 or $4,132 per square foot. (4.39 acres x 43,560 square feet per acre = 191,228 square feet; $790,200/191,228 = $4,132.) The assessor also testified that in 2007 a 10% increase in value was applied to account for the passage of time from 2003.
According to the assessor, utilizing the 2003 land value of $4,132 per square foot, a “typical lot” of 9,375 square feet (75 x 125 = 9,375) would have been assessed at $38,737.50 (9,375 x $4,132) in 2003. Increasing that by 10% results in a value of $42,611.25, which was rounded to $42,500.00. The assessor further testified that the improvement consisting of the main house was assessed at $50,000, for the total exemption amount of $92,500.00.[6] The assessor assigned this assessment to “Lot 7X”.[7]
The assessor contested the testimony of the plaintiffs witness that the gardens surrounding the main house extended 300 feet and testified that there were “hardly any gardens”, although he conceded it was December at the time of his most recent inspection, when the gardens were “dead”. He maintained that the utilization of the dimensions of a “typical” lot in Paramus was “more than adequate” particularly in light of the fact that there were no specific boundaries for the other uses on the property. He further testified that the plaintiff had provided no documentation to support any other determination of curtilage at any time.
The assessor testified that only one-half of the exemption was applied because that portion of the property owned by the children (as Co-Trustees of the Trust) was not eligible for the *351 exemption, although the interest owned by the surviving spouse was. He indicated that he had not been given any information regarding the terms of the trust and deemed it ineligible for the exemption.
As noted earlier, the assessment issued to the subject property of $1,406,300 ($790,200 to land and $616,100 to the improvements) was appealed to the Bergen County Tax Board which affirmed the assessment “without prejudice.”[8] The plaintiff thereafter timely filed the instant complaint contesting the municipality’s failure to grant a Veteran’s Exemption to the subject property and a trial of the issues was held before this court.
After trial, the court requested that the parties brief the issue of whether, and to what extent, the manner in which the property was owned by the deceased veteran and his spouse affected the availability of the exemption to the plaintiff. The court also asked the municipality to clarify the amount of the exemption granted to the plaintiff for the year in question.
In the post-trial submission of the municipality the Borough maintained that the assessor testified that: the dwelling had been assessed at $200,000; the land included in the curtilage had been determined with reference to a “standard lot” containing 100’ by 125’; the assessed value of the land in the standard lot was $170,000; and that 50% of this amount ($200,000 plus $170,000 divided by 2 = $185,000) had been granted as a veteran’s exemption.[9] The Borough further argued that the 50% interest as tenant in common owned by the children, as Trustees did not qualify for the surviving spouse’s veteran’s exemption, although the interest owned by the plaintiff directly did qualify.
*352 Plaintiffs post-trial submission argued that all of the subject property, excluding only that portion occupied by the farmer’s market should be included in the definition of curtilage and that the exemption should extend to 100% of the exempt assessment.

Legal Discussion

A Veteran’s Exemption from Real Property Tax
Article VIII, Section 1, Paragraph 3 of the New Jersey Constitution provides for the deduction from real property taxes for veterans of the Armed Forces of the United States as “from time to time may be provided by law.” In partial recognition of that provision the New Jersey Legislature enacted N.J.S.A. 54:4-3.30(a) which provides, in pertinent part, that:
The dwelling house and the lot or curtilage whereon the same is erected, of any citizen and resident of this State, now or hereafter honorably discharged or released under honorable circumstances, from active sendee, in time of war, in any branch of the Armed Forces of the United States, who has been or shall be declared by the United States Veterans Administration or its successor to have a sendee-connected disability ... declared by the United States Veterans Administration or its successor to be a total or 100% permanent disability ... shall be exempt from taxation on proper claim made therefore.
As indicated previously Edwin Walter Hays served honorably during World War II and was declared to have a service-connected disability deemed to be a total disability by the Department of Veteran’s Affairs.
B. Determination of Lot/Curtilage of Dwelling House
N.J.S.A. 54:4-3.30(a) grants an exemption from property taxes on the “dwelling house and the lot or curtilage whereon the same is erected”. Curtilage does not necessarily include the entirety of the lot upon which a dwelling is situated.
The words “lot or curtilage” as used (in N.J.S.A. 54:4-3.30) have no substantial difference in meaning. They do not refer to any specific size or boundaries. To be included within the exempt lot or curtilage it must be shown that there is a natural and necessary connection between the dwelling house and the amount of land claimed. Its dimensions must be confined to that portion of the land which has a reasonable relationship to the dwelling house and which is reasonably required by the disabled veteran for the occupation and full enjoyment of the dwelling. This leads us to the question as to what is the reasonable amount of land so required for a dwelling house occupied by a disabled veteran. The answer is to be determined by the pertinent facts of each individual case.
*353 [McTague v. Township of Monroe, 1 N.J.Tax 66 (Tax 1980).]
In the case before this court, the taxpayer maintains that the curtilage of the subject property should include the entire 4.39 acres, less only that undefined portion occupied by the farmer’s market/nursery.[10] Accepting that position would include within the exemption both an independent structure utilized as a rental residence and idle woodland. Plaintiff provided no evidence to justify the inclusion of the idle woodland for plaintiffs reasonable enjoyment of her home. In fact, the testimony was clear that the plaintiff did not utilize the wooded portion of the lot for any purpose.
Similarly, the court is unpersuaded that the mill house was required for the plaintiffs reasonable enjoyment of her dwelling house. For many years that structure was rented to third parties who had no relationship to or responsibility for the plaintiff or the eligible veteran during his lifetime. The rental of the mill house in the past several years to the plaintifPs granddaughter and husband who “look after” the plaintiff does not support the conclusion that the structure is reasonably related to the dwelling and reasonably necessary for the plaintiffs enjoyment of the home. While the close physical location of plaintiffs relatives to the plaintiff may be convenient, it does not justify the plaintifPs reasonable need for that structure for her enjoyment of her own home. It is unlikely the Legislature intended that the exemption statute be extended to include a secondary rental unit which has no natural and necessary connection to the dwelling house.
Plaintiff produced no reliable evidence of the size of any area actually enjoyed by the plaintiff or reasonably necessary for that purpose. Plaintiffs daughter testified that the gardens and pond near the home were enjoyed by the plaintiff but provided nothing to establish the size of the area in which they were located. While she estimated that the area around the main house which contained the gardens consisted of 300 square feet, nothing was *354 produced to support that estimate nor was the ability of the witness to make such an observation established.
It is well settled that “[t]ax exemption statutes are strictly construed, and the burden of proving entitlement to an exemption is on the party seeking it.” Abunda Life Church of Body, Mind & Spirit v. City of Asbury Park, 18 N.J.Tax 483, 485 (App.Div.1999) (citing New Jersey Carpenters Apprentice Training and Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78, 685 A.2d 1309 (1996); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961)). Furthermore, as relates to the veteran’s exemption statute, “the burden of proof is upon the taxpayer claiming an exemption to establish the amount of land required.” McTague v. Monroe Twp., supra, 1 N.J.Tax at 72.
Plaintiff had the burden of proving the amount of land reasonably needed for the plaintiffs enjoyment of the home. Plaintiff produced only vague assertions as to the size of the gardens surrounding the plaintiffs home and failed to carry that burden.
I therefore find that the plaintiff failed to meet her burden of proof as to the amount of the land to be included in the curtilage of the subject property and accept the municipality’s contention that curtilage in this instance should be limited in the manner determined by the Borough to be a “typical” residential lot.[11]
C. The Exemption Available to the Surviving Spouse
1. Surviving Spouse Exemption
Plaintiffs entitlement to have the exemption applied to the subject property is dependent upon qualification under N.J.S.A. 54:4-3.30(b)(1) which provides:
*355 The surviving spouse of any [disabled veteran qualifying under N.J.S.A. 54:4-3.30(a) ], who at the time of death was entitled to the exemption provided under this act, shall be entitled, on proper claim made therefor, to the same exemption as the deceased had, during the surviving spouse’s widowhood or widowerhood, as the case may be, and while a resident of this State, for the time that the surviving spouse is the legal owner thereof and actually occupies the said dwelling house or any other dwelling house thereafter acquired.
[N.J.S.A. 54:4-3.30(b)(1).]
Thus in addition to demonstrating that plaintiff is the surviving spouse and unremarried widow of a qualifying disabled veteran, she must also demonstrate (1) that the deceased veteran was entitled to the exemption at the time of his death; (2) that she is the legal owner of the subject property (or replacement property) for the year under review; (3) that she is a resident of this State; and (4) that she actually occupies the dwelling house (or replacement dwelling). Upon such a demonstration, she is entitled to the “same exemption as the deceased had”.
Plaintiff has shown that she is the surviving spouse and widow of the deceased veteran and that she is a resident of this State who actually occupied the subject property on the date at issue. The municipality has conceded these issues and that the decedent was a qualifying disabled veteran. To complete qualification for the exemption, the plaintiff must establish the extent of the exemption that the deceased veteran had and the plaintiffs ownership interest in the property after the veteran’s death.
2. Ownership of the Subject Property — the tenancy in common.
(a) Exemption Available During the Veteran’s Lifetime
Although Mr. Hays’ status as a veteran with a service connected total disability was established, in order to qualify for the exemption statute he had to have had a qualifying ownership interest in the subject property. To determine the veteran’s ownership interest in the subject property for purposes of the Veteran’s Exemption Statute, the court must review the manner in which he held title. Hennefeld v. Township of Montclair, 22 N.J.Tax 166, 188 (Tax 2005).
*356 Plaintiff first acquired title to the subject property as a result of the death of her mother. She thereafter conveyed title to her husband and herself, as husband and wife, thereby establishing a tenancy by the entirety. See N.J.S.A. 46:3-17.2. Upon the creation of the tenancy by the entirety, Mr. Hays had “full” ownership of the subject property for purposes of the exemption statute and was eligible for an exemption of 100% of the dwelling house and lot or curtilage. N.J.A.C. 18:28-2.9(b).
Subsequently, however, the ownership of the subject property was converted into an equal tenancy in common and at the time of his death, the qualifying veteran’s interest was as a 50% tenant in common. Although it is apparent that the Borough did not consider Mr. Hays’ interest as tenant in common ineligible for the exemption, the Regulations issued pursuant to the Veteran’s Exemption Statute are to the contrary. (“Ownership as a joint tenant, except where an owner is a registered domestic partner, or tenant in common, does not qualify for the exemption.” N.J.A.C. 18:28-2.10(b)[12]) Since the eligibility of Mr. Hay’s ownership in the subject property determines the exemption he had at his death and therefore dictates the availability of the exemption to the plaintiff, his ownership interest must first be examined.
The question of the eligibility of joint ownership by a veteran (in a manner other than as a tenant by the entirety) has been previously addressed by the Tax Court. In fact, the adoption of N.J.A.C. 18:28-2.10(b) appears to have been in response to the holding of this court determining that an interest as a joint tenant *357 with a right of survivorship between a veteran and his domestic partner was an eligible ownership interest for the Veteran’s Exemption Statute.[13] Hennefeld v. Twp. of Montclair, supra, 22 N.J.Tax 166. Thereafter this court expanded Hennefeld to include joint tenancies between a veteran and any other person and invalidated N.J.A.C. 18:28- 2.10(b) to the extent it declared such joint tenancies ineligible. Wellington v. Township of Hillsborough, 27 N.J.Tax 37 (Tax 2012).
As a result of the holding in those cases, when the veteran’s ownership interest is as a joint tenant, the exemption is allowed, but only for a proportionate share of the subject property. The proportionate ownership allowance includes the situation where the veteran holds title as a joint tenant with his or her spouse, instead of as a tenant by the entirety, Hennefeld v. Twp. of Montclair, supra, 22 N.J.Tax at 194, or where the other joint tenant is a “parent, child, other relative, caretaker, business partner, creditor, stranger, or, ... former spouse.” Wellington v. Twp. of Hillsborough, supra, 27 N.J.Tax at 57.
Hennefeld and Wellington applied to situations where the ownership interest is a joint tenancy. Neither address the situation where, as here, the ownership interest is as a tenant in common.
“The essential characteristics of a joint tenancy are the four unities of interest, title, time and possession, and their coexistence, for, if any is lacking, there is no joint tenancy.” Lipps v. Crowe, 28 N.J.Super. 131, 132, 100 A.2d 361 (Ch. Div. 1953) (citations omitted). The most significant attribute of the joint tenancy is the right of survivorship whereby on the death of *358 any joint tenant, the survivor(s) automatically acquire title until there is only one such survivor left, who becomes the sole owner. 13 New Jersey Practice, Real Estate Law and Practice, § 5.2 at 57 (John A. Celentano, Jr.) (Second Edition, 2002) (hereinafter “Celentano”). “A joint tenancy differs from a tenancy in common because each joint tenant has a right of survivorship to the others share.” Black’s Law Dictionary 1694 (10th ed.2014).
However, any joint owner may at any time destroy one or more of the unities, thus severing the interest of the joint tenant and ending the right of survivorship. Steinmetz v. Steinmetz, 130 N.J. Eq. 176, 179, 21 A.2d 743 (Ch.1941). Thereafter, the purchaser of a joint tenant’s interest becomes a tenant in common with the other joint tenant. Dover Trust Co. v. Brooks, 111 N.J. Eq. 40, 160 A. 890 (Ch.1932) Celentano, § 5.7, supra at 60-61.
During the joint tenancy, the right of survivorship constituted a contingent interest subject to destruction at the will of either tenant. Whenever any one of the four unities of interest required to create a joint tenancy (title, time, possession and interest) is eliminated by the unilateral act of one joint tenant, the relationship of the parties is modified at least to the extent of extinguishing the right of survivorship. Accordingly, the right of survivorship could have been destroyed by either joint tenant’s sale or transfer of his or her interest in the property. “In joint tenancy, either of the owners may at his pleasure, dispose of his share and convey it to a stranger, who will hold undivided, and in common with the other owner.” (Citations omitted).
[Gauger v. Gauger, 73 N.J. 538, 542-43, 376 A.2d 523 (1977).]
Black’s Law Dictionary defines a tenancy in common as:
A tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship. — Also termed common tenancy; estate in common. Cf. joint tenancy.
[...]
“The central characteristic of a tenancy in common is simply that each tenant is deemed to own by himself, with most of the attributes of independent ownership, a physically undivided part of the entire parcel. “Thomas F. Bergin & Paul G. Haskell, Preface to Estates in Land and Future Interests 54 (2d ed.1984).
[Black’s Law Dictionary 1695 (10th ed.2014) ]
Notably,
A tenant in common, by definition has an undivided interest in the whole, that is, an interest that encompasses the entire property. As explained by 4 Thompson on Real Property § 1795 (1979):
*359 Each tenant in common has a separate and distinct freehold title. Each holds his title and interest independently of the others. His interest therefor can be transferred, devised or encumbered separately and without consent of the other cotenants. Other than the unity of possession each tenant in common holds the same rights as does an owner in severalty. The possessory rights of tenants in common are not, however, separate and distinct from each other. Possession is but a single unity. The interest of each cotenant is coextensive of the realty and extends to every part thereof. [Footnotes omitted.]
[Burbach v. Sussex Cnty. Mun. Utilities Auth., 318 N.J.Super. 228, 233-34, 723 A.2d 137 (App.Div.1999).]
The court finds that a veteran’s interest as a tenant in common with his or her spouse is an eligible ownership interest for purposes of the Veteran’s Exemption. Similar to a joint tenant, a tenant in common’s interest extends to the entirety of the property. As the distinguishing characteristic of survivorship may be destroyed at the will of any of the joint tenants, that distinction is without a sufficient difference to support a conclusion that a tenancy in common should be treated any differently than a joint tenancy for purposes of the Veteran’s Exemption Statute.
This conclusion is buttressed by the fact that N.J.S.A. 54:4-8.18 of the Veterans and Widows Act with respect to the veteran’s deduction authorizes a proportionate exemption for an interest owned as a tenant in common.
Where title to property as to which a veteran’s deduction is claimed is held by claimant and another or others, either as tenants in common or as joint tenants, a claimant shall not be allowed a veteran’s deduction in an amount in excess of his or her proportionate share of the taxes assessed against said property, which proportionate share, for the purposes of this act, shall be deemed to be equal to that of each of the other tenants, unless the conveyance under which title is held specifically provides unequal interests, in which event claimant’s interest shall be as specifically established in said conveyance.
[N.J.S.A. 54:4-8.18.]
The court recognizes that the Veteran’s Exemption Statute under review does not contain a similar provision. However, as noted by Judge Bianco, in Hennefeld,
Even though the Exemption Statute does not contain the same or similar language as the Veterans and Widows Act, N.J.S.A. 54:4-8.18, the parallels between the two laws cannot be ignored. Both the current versions of the Exemption Statute and the Veterans and Widows Act are founded in and authorized by Art. VIII, § 1, P3 of the Constitution of 1947. Both laws have been similarly interpreted by the Appellate Division and concern a reduction in property taxes for veterans and their surviving spouses. See Bor. of Wrightstown v. Medved, 193 N.J.Super. 398, 403-04 *360 [474 A.2d 1077] (App.Div.1984) (finding that “Art VIII, § 1, P3 of the New Jersey Constitution (prior to its amendment in 1983), N.J.S.A. 54:4-3.30 and 54:4-8.10 et seq. all [violated] the Fourteenth Amendment of the United States Constitution insofar as they [withheld] from spouses of female veterans the tax relief given spouses of male veterans”).
[Hennefeld v. Twp. of Montclair, supra, 22 N.J.Tax at 192-93.]
The court is mindful that its decision is contrary to the Director’s regulation at N.J.A.C. 18:28-2.10(b) making ownership as tenant in common ineligible for the Veteran’s Exemption. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The Supreme Court has directed courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. “Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing”. GE Solid State v. Dir., Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993).
However, “an administrative agency may not, under the guise of interpretation, extend a statute to give it greater effect than its language permits.” Ibid. “[A]n administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment.” Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 392, 476 A.2d 741 (1984).
I can discern no basis in the statute which would distinguish between the eligibility of an interest held as a joint tenancy and one held as a tenant in common. As with joint tenants, the available exemption is limited to a proportionate interest defined by his or her percentage ownership as tenant in common. Therefore, in the case at bar, once title was transferred to the parties as tenants in common the exemption available to Mr. Hays during his lifetime and at the time of his death was limited to 50% of the dwelling and curtilage.
*361 Plaintiff and her husband intentionally converted the ownership of the property from a form of ownership which would qualify for a 100% exemption — a tenancy by the entirety — to a form of ownership which qualified for only a 50% exemption — a tenancy in common — in order that they might obtain an estate planning benefit. Having decided to organize their affairs in this manner, they must accept the tax consequences of that decision. See General Trading v. Director, Div. of Taxation, 83 N.J. 122, 136-137, 416 A.2d 37 (1980).
(b) Ownership After the Death of the Veteran
As a corollary to the eligibility of 50% of the available exemption to Mr. Hays’ tenancy in common, that portion of the subject property owned by the plaintiff as tenant in common did not qualify for any percentage of the exemption during his life. Cf. Hennefeld v. Twp. of Montclair, supra, 22 N.J.Tax 166; Wellington v. Twp. of Hillsborough, supra, 27 N.J.Tax 37. Plaintiff cannot claim an exemption, as surviving spouse, which would exceed that which was available to the decedent during his lifetime. See e.g. Jackson v. Township of Neptune, 15 N.J.Tax 498 (Tax 1996) (surviving spouse not entitled to exemption for property not owned by veteran at his death); see also, Garma v. Township. of Lakewood, 14 N.J.Tax 1 (Tax 1994) (surviving spouse not entitled to exemption when deceased veteran was not a resident of New Jersey at time of death and therefore the veteran was not eligible for exemption). Therefore, at best, plaintiff is entitled to the exemption attributable only to Mr. Hays’ tenancy in common provided that she first establish that she is the legal owner of that interest. It is not sufficient that she prove that she owns “an” interest in the subject property. She must demonstrate that she is the successor to the interest previously owned by the qualifying veteran which qualified for the exemption. To allow otherwise would extend the available exemption beyond that which the decedent had at the time of his death, something neither contemplated by, nor permitted under, the statute.
The interest owned by the deceased veteran was conveyed by deed to his children as “remaining Co-Trustees pursuant to the *362 Last Will and Testament of Edwin Walter Hays”. As established above, the referenced trust was established for the benefit of plaintiff.
Regulation N.J.A.C. 18:28-2.9(e) which sets forth the conditions of eligible ownership for the Veteran’s Exemption Statute states: “Property held by a guardian, trustee, committee, conservator, or other fiduciary for a person who is otherwise qualified for the exemption is considered to have met the ownership requirement.” N.J.A.C. 18:28-2.9(e). Since the trust is held for the benefit of plaintiff, the qualified veteran’s surviving spouse, the interest in the property owned by the trust would be considered owned by her and thus eligible for the exemption. This result is in keeping with the intention of N.J.S.A. 54:4-3.30(b)(1) which is to continue the exemption the veteran had at the time of his death for the widowhood of the surviving spouse.
In so ruling, the court disregards N.J.A.C. 18:28-2.9(a) which requires “full ownership” for qualification for the exemption. Application of that regulation would make ineligible the interest the court has determined was eligible when owned by the veteran during his lifetime. We will not apply the regulation so as to disqualify that very interest which passes to his spouse in a qualifying manner. To do so would frustrate the intent of the statute. See Sheppard v. Township of Willingboro, 1 N.J.Tax 530, 424 A.2d 478 (Tax 1980) (Purpose of statute is to grant tax relief to unremarried widows of qualified veterans who remain in title and remain in possession as legal residents).
Therefore, for purposes of the provisions of N.J.S.A. 54:4-3.30(b), plaintiff is the legal owner of 50% of the subject property under the facts of this case.

Conclusion

The Court affirms the Borough’s determination that the plaintiff is entitled to a surviving spouse’s Veteran’s Exemption of 50% of the assessed value of the dwelling house and curtilage (albeit for different reasons.) In doing so, the court affirms the determination of curtilage made by the Borough. The court will not, however, rule that the dimensions of the “typical residential lot” is *363 anything less than what was actually applied by the Borough for the year in question. In other words, although the assessor testified that he had determined curtilage as a lot with the dimensions of 75’ by 125’, if the actual dimensions utilized by him was an area greater than that, the greater dimensions will apply. This court’s ruling will not be applied to decrease the dimensions of the lot already applied by the Borough in determining curtilage in this matter.
In light of the confusion engendered by the Borough’s post-trial submission on this issue, the court directs the Borough to submit the following information within 30 days of the date hereof:
1) The assessment applied to the 4.39 acres of land comprising the subject property;
2) The assessment applied to the various improvements on the subject property, stated separately as to each, prior to the application of the exemption; and
3) The amount of the Veteran’s Exemption applied for the year under review.
Upon receipt of the foregoing, the court will enter an order implementing the within opinion. The court retains jurisdiction.

Mr. Hays was a member of the U.S. Army Air Forces in 1944 when he was shot down by German fighters over Denmark and held by the Germans as a prisoner of war for fifteen months. During his captivity Mr. Hays was subjected to extreme conditions. On November 4, 1994 the Department of Veteran's Affairs declared that his wartime service-connected disability was totally disabling.

 Although the municipality agreed that the subject properly received an exemption during Mr. Hays' lifetime, neither the amount of the exemption nor the manner in which it had been calculated, was put before the court. Further, there was no testimony about when the exemption was first granted.

 Article Fourth of the Last Will and Testament of Edwin Walter Hays provides in pertinent part:
My Trustees shall hold [the Trust assets] IN TRUST, during the life of my wife, JOAN MACFALL HAYS, or until the earlier termination of the trust, for the following purposes:
(1) To pay all of the net income to her in convenient installments at least quarter-annually.
(2) To pay to my wife, JOAN MACFALL HAYS, at any time or times during the continuance of the trust, such sums from or any part or all of the principal as my Trustees may, in their sole discretion, determine for health, education, support or maintenance, only.

 The plaintiff's daughter, Susan Barnes, who is also a Co-Trustee of the co-owner trust, testified that the plaintiff’s family had determined that the mill house should be occupied by a family member who could look after the elderly plaintiff. The granddaughter's husband, being an EMT/Paramedic, was considered a particularly good choice for this purpose and he and plaintiff's granddaughter became the tenants of the mill house.

 The assessor confirmed that the site plan did depict the general outlines of the subject property and the approximate location of the various structures.

 It should be noted that the plaintiff contested only the alleged denial of the veteran’s exemption and did not contest the underlying assessment of the land or improvements on the subject property and presented no proofs as to value.

 "Lot 7X” is not an officially recognized tax lot as the subject property is not subdivided and is only one tax lot — Lot 7.

 The Memorandum of Judgment issued by the Bergen County Tax Board also indicated that the hearing had been waived, which was clearly in error. Both parties testified that a hearing was in fact held.

 Unfortunately, this is not at all the testimony of the assessor. His testimony has been accurately set forth in the body of the opinion above. Although the Borough's post-trial submission was not supported by an affidavit or certification of the assessor, it creates a question in the court's mind as to how the exemption, which the assessor maintained had been applied against the assessment, had in fact been determined.

 Plaintiff argued that the Borough Resolution approving the variance for the farmer’s market should be consulted to determine the extent of the permitted physical boundaries of that use but no evidence of the actual boundaries of the market on the subject properly was introduced at trial.

 As noted above, due to the confusion engendered by the post-trial submission of the Borough as to the dimensions actually utilized by the Borough for a typical residential lot, the court makes no finding as to these dimensions. The court notes that neither the testimony at trial nor the information provided in the post-trial submissions provided any information as to the zone in which the subject property was located or the minimum lot requirements for residential development. While minimum zone requirements are not determinative, such information would have been helpful to the court.

 The court notes that the wording of the regulation is inartful and might be considered as permitting a tenancy in common. The regulation under which the referenced section is issued is entitled "Ineligible Ownership” and the court reads the section as disallowing both joint tenancies and tenancies in common except where the joint tenancy is between registered domestic partners to recognize the holding in Hennefeld. This is further buttressed when one reads N.J.A.C. 18:28-2.9(f) (Eligible Ownership) which states: "Where a registered domestic partner holds title as joint tenant with right of survivorship, each is deemed to hold a full interest and thus either may be entitled to the exemption if otherwise qualified.” It appears the qualifying phrase "except where an owner is a registered domestic partner” was added to N.J.A.C. 18:28-2.10(b) to eliminate what would otherwise be a contradiction of N.J.A.C. 18:28-2.9(f).

 The parties in Hennefeld were a same sex couple who had been married under the laws of Canada and Vermont and who had conveyed title to themselves as tenants by the entirety. The court refused to recognize that tenancy and determined that the parties were joint tenants with a right of survivorship because at the time of the decision. New Jersey did not yet recognize same sex marriages. As a result of the U.S. Supreme Court decision in United States v. Windsor, — U.S. —, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013) and the New Jersey case of Garden State Equality v. Dow, 434 N.J.Super. 163, 82 A.3d 336 (Law Div.2013) New Jersey now fully recognizes and authorizes marriages between couples of the same sex.